DA 08-0020

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 40

DALE ALDRICH,

Petitioner and Appellant,

v.

MONTANA STATE FUND,

Respondent and Appellee.

APPEAL FROM:     Montana Workers' Compensation Court, WCC No. 2006-1536
Honorable James Jeremiah Shea, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Rex Palmer, Attorneys Inc., P.C., Missoula, Montana

For Appellee:

Kevin Braun, Special Assistant Attorney General, Montana State Fund,
Helena, Montana

Submitted on Briefs:  January 22, 2009

Decided:  February 18, 2009

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Dale Aldrich (Aldrich) appeals from a Decision and Judgment of the Workers' Compensation Court (WCC) denying his claims for an award of temporary total disability (TTD) benefits. For the reasons set forth below, we affirm the WCC's decision.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 The facts in this case are not in dispute. Aldrich had previously worked as a millwright for Northwest Erection, Inc. (Northwest) in Missoula County, Montana. Northwest was enrolled under a workers' compensation plan and was insured by Montana State Fund (State Fund). Aldrich suffered an occupational disease while working for Northwest which affected his low back, bilateral hips, and right knee. State Fund accepted liability for Aldrich's occupational disease, which was given an onset date of April 26, 1994. Aldrich underwent surgery on his right hip in 1998. After the surgery, Aldrich did not reach maximum medical improvement (MMI) for his occupational disease until November 18, 2003. MMI, or what was formerly referred to as "maximum medical healing," is defined as the "point in the healing process when further material improvement would not be reasonably expected from primary medical treatment." Section 39-71-116(14), MCA (1993).[1] Aldrich received a combined 33% whole person impairment rating for these conditions, and it was anticipated that he would have further degeneration of his conditions with the potential for additional surgery.

---

[1] This case is governed by the 1993 version of the Montana Workers' Compensation Act since that law was in effect at the onset of Aldrich's occupational disease.

¶3    Aldrich has not worked in gainful employment since 1994. Aldrich began receiving Social Security disability benefits effective August 1, 1994. Sometime after his surgery, State Fund arranged a physical and vocational evaluation for an employability and wage-loss analysis. The evaluation resulted in physician approval of two jobs for Aldrich in October 2001. However, a vocational consultant concluded that these two jobs were not available in the local labor market where Aldrich was residing. The consultant recommended against vocational rehabilitation but concluded that Aldrich might be able to pursue additional work if he moved to another area or his physical symptoms improved.

¶4    After this evaluation, State Fund determined that Aldrich should be deemed permanently total disabled (PTD) on November 8, 2001. PTD is defined as "a condition resulting from injury as defined in this chapter, after a worker reaches maximum medical healing, in which a worker does not have a reasonable prospect of physically performing regular employment." Section 39-71-116(19), MCA (1993). State Fund started paying Aldrich PTD benefits in November 2001. On December 1, 2003, Aldrich's Social Security disability benefits were converted to full Social Security retirement benefits. Since PTD benefits terminate upon the receipt of full Social Security retirement benefits, *see* § 39-71-710(1), MCA (1993), Aldrich's PTD benefits were terminated by State Fund on November 30, 2003.

¶5    On December 5, 2005, Aldrich had surgery on his left hip due to his occupational disease. State Fund accepted liability for the surgery and authorized both the surgery and post-surgical care. As of the time the briefs in this matter were filed, Aldrich was not

3

medically stable and was not expected to be medically stable for some time. On December 2, 2005, Aldrich requested TTD benefits from State Fund for his current period of medical instability starting on November 22, 2005 (the date of his pre-operative examination), until he reaches MMI. TTD is defined as "a condition resulting from an injury as defined in this chapter that results in total loss of wages and exists until the injured worker reaches maximum medical healing." Section 39-71-116(28), MCA (1993). In requesting TTD benefits, Aldrich argued that under § 39-71-710(1), MCA (1993), he could receive and was entitled to Social Security retirement benefits and TTD benefits at the same time. However, State Fund denied Aldrich's request for TTD benefits on the grounds that Aldrich was not suffering a "total loss of wages" per § 39-71-701, MCA (1993), due to the fact that he was retired and no longer in the workforce.

¶6 Aldrich appealed State Fund's denial of TTD benefits to the WCC. Aldrich also sought statutory penalties against State Fund as well as attorneys fees for State Fund's failure to grant him TTD benefits. After the issues were fully briefed, the WCC rendered its decision, holding that Aldrich was not entitled to TTD benefits, an award of a statutory penalty, or attorneys fees. The WCC noted that in order to be entitled to TTD benefits Aldrich must satisfy § 39-71-701, MCA (1993). That statute reads in pertinent part as follows:

> [A] worker is eligible for temporary total disability benefits when the worker suffers a total loss of wages as a result of an injury and until the worker reaches maximum healing.

Section 39-71-701(1), MCA (1993).

4

¶7 The WCC determined that this statute set forth a two-part test. First, a worker must establish a total loss of wages as a result of the injury. Second, the worker must not be at maximum healing. The WCC found that Aldrich could satisfy the second part of the test, but could not demonstrate a total loss of wages as a result of the 2005 injury. Aldrich had not worked for approximately 11 years at the time of his pre-operative examination on November 22, 2005. Prior to this examination, he had been at MMI since 2001 and drawing Social Security retirement benefits since December 1, 2003. Thus, Aldrich could not show that he had suffered a total wage loss as a result of his 2005 condition and surgery. Accordingly, the WCC found that Aldrich had failed to meet his burden of proof to demonstrate that he was entitled to receive TTD benefits.

¶8 Aldrich now appeals the WCC's decision. He presents two issues on appeal. First, he maintains that State Fund is required to pay him TTD benefits. Second, he argues that the WCC erred in failing to award attorneys fees and impose a statutory penalty on State Fund for its failure to pay TTD benefits. Because we find issue one dispositive and affirm the WCC's decision, we do not reach issue two. Thus, we state the sole issue on appeal as follows:

¶9 *Did the WCC err in determining that Aldrich was not entitled to TTD benefits in this case?*

## STANDARD OF REVIEW

¶10 We review a WCC's conclusions of law de novo to determine if they are correct. *Harrison v. Liberty Northwest Ins. Corp.*, 2008 MT 102, ¶ 11, 342 Mont. 326, 181 P.3d

590. We review the WCC's factual findings to determine if they are supported by substantial credible evidence. *Harrison*, ¶ 11.

## DISCUSSION

¶11  Aldrich argues the WCC erred when it determined he was not entitled to TTD benefits. Aldrich maintains that his entitlement to TTD benefits is not affected by his status as a retiree or his receipt of Social Security retirement benefits, and argues he has satisfied the two-prong test for TTD benefits eligibility under § 39-71-701, MCA (1993). On the issue of whether he has suffered a total loss of wages as a result of his current condition and related surgery, he argues that the WCC erred in concluding that he failed to satisfy this prong. Instead, Aldrich argues that he has satisfied this condition under *Wilson v. Sun River Cattle Co.*, 206 Mont. 63, 670 P.2d 931 (1983), because he cannot be expected to work while he is in recovery for the 2005 condition.

¶12  In this connection, Aldrich faults State Fund and the WCC for allegedly considering additional and irrelevant criteria when determining his entitlement to TTD benefits. He argues that the WCC improperly factored in the length of his previous medical stability, the length of time he had been off work, and the length of time he had been receiving Social Security benefits in determining whether he would be entitled to TTD benefits. He argues these additional considerations are irrelevant in determining his TTD eligibility, and are instead a throwback to age and disability bias. Aldrich argues that neither his age nor current condition preclude him from eventually returning to the workforce, and that the WCC made assumptions regarding his ability to work which are

6

not relevant to determining whether he has suffered a total loss of wages. Accordingly, Aldrich argues that the WCC erred and that he is entitled to TTD benefits.

¶13 We disagree and affirm the WCC's decision. The WCC correctly concluded that Aldrich's receipt of Social Security retirement benefits did not preclude him from receiving TTD benefits. *See* § 39-71-710(1), MCA (1993). Thus, Aldrich is entitled to TTD benefits if he satisfies the statutory criteria at § 39-71-701, MCA (1993). Here, it is undisputed that Aldrich is not at maximum healing, so the sole question is whether he has suffered a total loss of wages as a result of his injury and current period of medical instability which began on November 22, 2005.

¶14 Relying on *Wilson*, Aldrich argues that while he undergoes treatment and recovery for his injury he is suffering a total loss of wages because he cannot be expected to work. However, *Wilson* is clearly distinguishable from the case at bar. In *Wilson*, claimant Wilson was working for the Sun River Cattle Company when he was involved in an industrial accident and sustained an injury. Wilson underwent surgery for the injury, and later submitted a workers' compensation claim. He received TTD benefits from the time of the accident, October 21, 1978. *Wilson*, 206 Mont. at 65-66, 670 P.2d at 932.

¶15 Wilson resumed working in March 1980, this time for Harris Land and Cattle Company. On April 25, 1980, Wilson was performing his work duties when he began experiencing severe back pain and nausea. He was taken to the local emergency room and was diagnosed with an acute lumbosacral strain. Wilson submitted a claim for his medical treatment. The WCC ultimately ordered the insurer to pay these claims, and the insurer appealed. *Wilson*, 206 Mont. at 66-67, 670 P.2d at 932-33.

7

¶16    On appeal, this Court affirmed the WCC's decision. As Aldrich correctly notes, in *Wilson* we stated that "[w]hile he undergoes treatment, claimant will of necessity experience a total loss of wages." *Wilson*, 206 Mont. at 72, 670 P.2d at 935. However, Aldrich's case is distinguishable from *Wilson* in a critical respect. Wilson was currently earning a wage which was lost to him as a direct result of his injury and treatment. By contrast, Aldrich was not earning a wage at the time of his 2005 surgery and treatment. Moreover, even his receipt of Social Security benefits was not interrupted as a result of his condition, treatment, and recovery. Quite simply, Aldrich did not suffer a "total loss of wages" as a result of the 2005 condition and surgery. Therefore, he has failed to meet the requirements of § 39-71-701(1), MCA (1993).

¶17    Finally, we note that Aldrich has not demonstrated that he had any job prospects which he could not accept on account of this injury. It is entirely possible that Aldrich may one day be able to return to the workforce; his age and past history are certainly not insurmountable barriers to doing so. However, Aldrich has not established or even alleged that at the onset of his 2005 condition he was either seeking gainful employment or had viable job prospects or another prospective source of wages which the onset of his condition and subsequent treatment prevented him from receiving. Had such been the case, then his argument that he had sustained a total wage loss might have arguable merit. For these reasons, we conclude the WCC did not err in determining that Aldrich failed to demonstrate he suffered a total loss of wages as a result of his 2005 condition and treatment.

## CONCLUSION

8

¶18    The decision of the WCC denying Aldrich's request for TTD benefits is affirmed.


                              /S/ PATRICIA COTTER


We concur:

/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ BRIAN MORRIS
/S/ JIM RICE